UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

DORIS COHN,                )
                           )
    Plaintiff,             )
                           )
vs.                        )   CIVIL ACTION No. CV-95-S-3307-NE
                           )
THE GOODYEAR TIRE &        )
RUBBER COMPANY,            )
                           )
    Defendant.             )



ENTERED
MAR 1 3 1997

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment. Plaintiff failed to respond to defendant's motion. Accordingly, this court adopts defendant's statement of facts as its own. Upon consideration of the motion, pleadings, brief, and evidentiary submissions, this court is of the opinion that defendant's motion is due to be granted.[1]

### I. STATEMENT OF THE CASE

Doris Cohn was employed as a splicer by The Goodyear Tire & Rubber Company ("Goodyear") at its plant located in Decatur, Alabama, from October 23, 1968 through September 1, 1994. On August 27, 1992, Cohn's right great toe was amputated by Dr. Kenneth E. Chandler. Dr. Chandler gave Cohn permission to return to full work duty on September 30, 1992. (Chandler Deposition at

---

[1] In connection with the instant motion this court has considered the following brief and evidentiary submissions: (1) Movant's Initial Submission in Support of Motion for Summary Judgment ("Defendant's Brief"); (2) Deposition of Kenneth E. Chandler, M.D., ("Chandler Deposition"); and (3) Affidavit of Shara Yerby ("Yerby Affidavit").

15

6-7.) On February 11, 1994, Cohn took an extended medical leave due to circulatory problems in her right foot. Cohn remained on medical leave, receiving sick pay, until she applied for and received disability retirement on September 1, 1994. (Yerby[2] Affidavit at 3.) On May 9, 1994, while on medical leave, Cohn filed a charge of discrimination on the basis of disability with the Equal Employment Opportunity Commission ("EEOC") alleging:

> I am a diabetic. I have a diabetic ulcer on my right foot, and required that my right toe be amputated. This area is extremely sensitive and painful. As a result of this disability I cannot run, cannot walk for significant distances, cannot stand for prolonged periods, cannot perform the duties required in a wide spectrum of jobs, and is [sic] otherwise substantially limited in many major life activities. I am disabled within the meaning of the Americans with Disabilities Act of 1990, 42 U.S.C. Sections 12101 et seq.
>
> I have requested that my employer make accommodation to my disability, but they have refused. On one occasion, I bid on a job that I would perform while sitting down. The company then came along and added new duties to this job so that I could not perform it. They also will not consent to placing me in other vacancies that I could perform.
>
> I believe that I have been discriminated against because of my disability, and that my legal rights pursuant to the Americans with Disabilities Act have been violated.

(Exhibit 6 to Yerby Affidavit: EEOC Complaint.) Following that complaint, Cohn returned to Dr. Chandler who performed an above the knee amputation on July 14, 1994. (Chandler Deposition at 8.) On December 22, 1995, Cohn filed this action alleging she was

---

[2] Shara Yerby is an Industrial Relations Specialist at the Goodyear plant in Decatur, Alabama. "The Industrial Relations Department at Goodyear is responsible for overseeing a variety of personnel matters arising at this plant, including ... employee benefits ... as well as responding to requests for accommodation due to disability." (Yerby Affidavit at 1.)

2

subjected to discrimination by Goodyear on the basis of her disability, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA").

## II. DISCUSSION

The ADA provides that no covered employer shall discriminate

> against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (1995). The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). "The initial inquiry in an ADA claim, therefore, is whether the plaintiff is a qualified individual with a disability." *Hardy v. Sears, Roebuck and Co.*, 1996 WL 735565 (N.D. Ga. 1996).

Goodyear asserts that it is entitled to summary judgment because Cohn failed to demonstrate that: (1) she is a "qualified individual with a disability"; and (2) Goodyear failed to reasonably accommodate her due to her disability. Cohn did not respond to Goodyear's arguments. Therefore, this court concludes that Cohn concedes those points. *See Swedish American Hospital v. Midwest Operating Engineers Fringe Benefit Funds*, 842 F. Supp. 1039, 1043 (N.D. Ill. 1993)(Swedish American ... has failed to respond to Midwest's arguments in their opposition papers, and therefore concedes these points"); *see also, Southern Nevada Shell Dealers Association v. Shell Oil, Co.*, 725 F. Supp. 1104, 1109 (D.

3

Nev. 1989); *Valluzzi v. United States Postal Service*, 775 F. Supp. 1124, 1125 (N.D. Ill. 1991). Even so, this court will briefly address defendant's arguments.

**A.  Is plaintiff a "qualified individual with a disability?"**

A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position [as determined by the employer] that such individual holds or desires." 42 U.S.C. 12111(8) (1995). Goodyear contends that Cohn is not a "qualified individual" because, with or without reasonable accommodation, Cohn cannot perform an essential function of her employment position: she cannot attend work. (Defendant's Brief at 9.)

"Except in the unusual case where an employee can effectively perform all work-related duties at home, an employee who cannot come to work cannot perform any of her job functions, essential or otherwise." *Wimbley v. Bolger,* 642 F. Supp. 481, 485 (W.D. Tenn 1986), aff'd, 831 F.2d 298 (6th Cir. 1987); see, e.g., *Jackson v. Veterans Administration*, 22 F.3d 277 (11th Cir. 1994), reh'g denied, 30 F.3d 1500 (11th Cir. 1994)(excessive absenteeism rendered employee not "qualified" under the Rehabilitation Act); *Tyndall v. National Education Centers, Incorporated of California,* 31 F.3d 209 (4th Cir. 1994)(an employee who cannot meet attendance requirements is not a "qualified" individual under the ADA); *Carr v. Reno,* 23 F.3d 525, 529 (D.C. Cir. 1994)(coming to work regularly is an "essential" function); *Law v. United States Postal Service,*

4

852 F.2d 1278, 1279-80 (Fed. Cir. 1988)(attendance is a minimum function of any job). Cohn's treating physician, Dr. Chandler, informed Goodyear that Cohn was "totally and permanently disabled for gainful employment." (Chandler Deposition at 10; Defendant's Exhibit 2: Physician's Report.) Dr. Chandler testified that Cohn was never able to return to work after February 11, 1994, and she has not attempted to return to Goodyear since that date. (Chandler Deposition at 10.) Furthermore, the undisputed evidence shows that "[a]ttendance is an essential function of all jobs at Goodyear," and that Cohn cannot meet Goodyear's attendance requirement. (Yerby Affidavit at 3.) Therefore, this court finds she is not a "qualified individual with a disability" under the ADA.

**B. Did Goodyear fail to reasonably accommodate Cohn?**

Goodyear also contends that, even if Cohn was a "qualified individual with a disability," it could not have discriminated against her by failing to make reasonable accommodations because it was unaware that any accommodation was necessary. "[I]t is the responsibility of the individual with the disability to inform the employer an accommodation is needed." *Mears v. Gulfstream Aerospace Corp.*, 905 F. Supp. 1075 (S.D. Ga. 1995), *aff'd without opinion*, 87 F.3d 1331 (11th Cir. 1996)(citing 29 C.F.R. § 1630, Appendix at 407); *see, e.g., Hardy v. Sears, Roebuck and Co.*, 1996 WL 735565 (N.D. Ga. Aug. 28, 1996)(in general, it is the responsibility of the employee to inform the employer that an accommodation is needed); *Fussell v. Georgia Ports Authority*, 906 F. Supp. 1561, 1569 (S.D. Ga. 1995), *aff'd*, ___ F.3d ___, (11th Cir.

5

1997)("before an employer must make accommodation for the physical or mental limitation of an employee, the employer must know that such limitation exists.")

Goodyear asserts that Cohn never notified Goodyear that she suffered from a disability or requested reasonable accommodation for any disability prior to the filing of her EEOC complaint. Shara Yerby testified that:

> Based upon my careful review of Ms. Cohn's personnel and medical files prepared and maintained at Goodyear and, otherwise, to the best of my knowledge, information, and belief, at no time during the course of her employment with Goodyear, prior to the filing of her EEOC charge of discrimination, did Ms. Cohn, or anyone on her behalf, including any representative of her Union, ever inquire about or seek any type of accommodation or alteration of her job or work environment due to a disability.

(Yerby Affidavit at 5.) The only evidence in the record refuting that position, is a single statement in Cohn's EEOC complaint alleging, "I have requested that my employer make accommodation to my disability, but they have refused." (Exhibit 6 to Yerby Affidavit: EEOC complaint.) However, Cohn's bare assertion that she requested accommodation is not supported by any record evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986)(nonmovant must "go beyond the pleadings" and point to evidence by way of affidavit, deposition, answers to interrogatories, or admissions on file); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989)(plaintiff must present more than speculation and conclusory allegations). Rule 56(e) provides in part:

6

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. Pro. 56(e). The foregoing portion of Rule 56(e) was enacted "to overcome a line of cases ... which has impaired the utility of the summary judgment device":

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter .... Instead, the adverse party rests on averments of his pleadings which on their face present an issue.
>
> ....
>
> The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. [Cases] which permit[] the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, [are] incompatible with the basic purpose of the rule.

Fed. R. Civ. Pro. 56(e), Advisory Committee Notes (citations omitted)(emphasis added). Here, the sole statement in Cohn's EEOC complaint does not suffice to overcome the evidence presented by Goodyear indicating that it was never notified that Cohn requested reasonable accommodation for any disability prior to the filing of her EEOC complaint. Therefore, Goodyear was not under a duty to provide such accommodation.

7

## III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be issued contemporaneously herewith.

DONE this 13th day of March, 1997.

                                                United States District Judge